Mike Planton, appearing for the appellants in this action, Stephen and Melody Millett. And I would like to reserve two minutes of my time for rebuttal, and I'll certainly endeavor to stop at the appropriate point. All right. Thank you. I'm sure the Court's familiar with the facts in this case, having reviewed the briefs, but there's one key fact that I think bears emphasis. And that's the fact that the credit manager product, which is the identity theft protection product at issue in this case, only warns consumers of identity theft under limited circumstances. It only warns consumers if the identity theft involves the theft of more than one personal identifier. It only warns consumers if the identity theft, if Experian decides to associate that identity theft with the credit report. And it only warns consumers if the identity theft happens to fall under one of the five specific categories the credit manager monitors. If the identity theft doesn't meet all three of those criteria, the credit manager product will not inform the consumer about the incident of identity theft. All right. So that's a given. That's true. But didn't the terms and conditions of the contract inform your client of that fact? No, they didn't. And that's an excellent question, Your Honor, because that's one of the key errors that the district court made in its analysis. The district court, in ruling on the breach of contract claims, found that the contract only promises for, well, that the contract only promises that credit manager will monitor your credit report for five specific types of transactions. The problem is that that language is nowhere in the terms and conditions. The terms and conditions make absolutely no reference to the five categories of transactions that defendants and the district court focused upon. And the portion of the contract that pertains to credit manager does not even use the term credit report. But specifically, your problem, your client's problem, is that the Social Security number was used by someone else as well as by him. Correct? It was used to open credit accounts, yes. And did that fact appear on the credit report itself? It did not appear on the Experian credit report, no. Okay. As I read the materials that were given to your clients, the only promise, the only activity that was promised was to monitor the credit report for indicia of theft, not to monitor the whole world for indicia of identity theft. And if this is not something that would appear on the credit report, I just don't see how you have a claim. Well, I think there are two. That's essentially what the district court found, and I think there are two problems with that analysis. One, I think the language of the advertisements can lead to conflicting inferences. I think there's still a dispute about the level of protection that was promised. I just don't see it. You know, they say they'll monitor your credit report to alert you to potential fraud. They'll monitor your credit report. It's all about your credit report. But I don't think that's all the ad says. Where are you looking at the ad? And I provided the court with exhibits. I think page 688 is the one that would be pertinent. The ad essentially says we'll protect you from identity theft by monitoring your credit report. Now, one, we don't concede that that's absolutely even literally true, because this one ad happens to say that, but there are many ads that don't make that point. But everything in this material refers back to the credit report. It says we'll be alerting you to potential fraudulent items and other critical changes in your credit report. It's all about the credit report. And I don't know how anybody reasonably could think that a credit reporting agency that says, we'll tell you everything we see in your credit report that might look fishy, promises to go out and look for stuff that isn't in the credit report. Well, I think the problem is in the implications and omissions of the ad. And if I could briefly touch upon California law, which I think the district court failed to apply, California courts have clearly held that even when the language of an ad is literally true, the ad can nonetheless be misleading if what it implies is not accurate or if it omits important information. Well, I guess that's what my problem is. I don't see any implications. So I think the implication, the ad says we'll protect you from identity theft by monitoring your credit report. The implication is that monitoring your credit report is, in fact, an adequate means of protecting you from identity theft. And I think the facts in this case show that that's not true. The ad could be more generically viewed in a formula of we'll protect you by doing X. Well, when a consumer sees an ad that says that, the natural assumption is doing X must be enough. So if someone says we'll protect you from break-ins by giving you a burglar alarm system, and someone hijacks you from your car when you're at the supermarket, you're going to say, well, they were supposed to give me a bodyguard because they said they'll protect me against, you know, invasions? I mean, that's really what it sounds like to me. I think the better analogy is I think this product is analogous to a home of harm system, but it's analogous to a home alarm system that only tells you if somebody's breaking in your front door. And it doesn't tell you if someone's breaking in your back door or one of your windows. And I think if an ad says we'll protect you from burglaries by providing this home alarm system, the natural implication is that it will protect you from someone breaking in your back door. Well, you had a survey, but it never was introduced into evidence. Well, I believe that obviously there's a dispute as to whether the survey evidence is properly before the Court. It's still our contention that it is. I believe the Court did consider that evidence in the context of the motion to reconsider and then reaffirmed the summary judgment motion based upon that evidence. Because it was not newly discovered evidence. The survey did not exist at the time of the summary judgment proceedings. And I think it's important to consider the context of this. The summary judgment motion was filed eight months before the close of discovery and well before the designation of experts in this case. So plaintiffs had not yet designated their expert or had their expert prepare the survey. We did prepare the survey more than three months before the cutoff and provided it to the Court. So I don't think it could be said that we didn't provide that evidence in a timely manner. And that survey evidence, and again at the Isn't it better practice to get your survey conducted before you file a lawsuit? In this case, no. I believe a number of issues needed to be fleshed out. For one, we needed discovery to flesh out the scope of particular advertisements. This is a product in which they advertise it on the Internet by various one-page ads, and we needed to ascertain the time frames in which particular ads were used. Once it became apparent which ads Then you get all that together before you file your complaint. Then you go ahead and file a complaint. It was not possible for us to get all that together without filing a complaint because we needed discovery in order to determine that information. That's knowledge exclusively within the knowledge of defendants here, and they would not just voluntarily offer that information to us. And that makes a very good point because So you didn't know whether you had a case or not until you conducted discovery. We knew that there were ads which we viewed as misleading, that we didn't know what all of the ads were, and we didn't know during what time frames they were used, and we didn't know which specific ads would become the focus of the case. That became apparent in the context of the summary judgment proceeding. But isn't, I mean, your whole case rests on the advertising alone. Are you arguing that your client had no responsibility to look at the terms and conditions before signing up with the contract? I disagree that our case rests on the advertisements alone. We have breach of contract claims, which are about the terms and conditions and consumer protection claims. All right, but you're misleading advertising. In the survey that you did, did you put the terms and conditions in front of the people who responded to the survey? We did not. Under the California law, the advertisements themselves are generally viewed as the prime evidence of whether the advertisements are misleading, and so we focused upon the advertisements in the survey. I don't think the terms and conditions help, though, because the terms and conditions provide even less information than the advertisements provide. Again, the terms and conditions say nothing about only monitoring the credit report. There's a disclaimer, isn't there, in the terms and conditions, as to what the extent of responsibility the credit manager takes over identity theft? I don't believe there's a disclaimer that goes straight to the issue of how this ad was misleading, and I don't think they could disclaim the fact of misleading advertising. I mean, I don't think by means of the contract they could eliminate a consumer protection claim based upon the misleading terms in the ads. And I think it's also important to look at the reasonable person standard that California courts apply in a consumer protection claim. And California courts have given quite a bit of definition to that. They specifically indicate that a reasonable consumer is unwary, trusting, not required to investigate the merits of the ad, and not particularly sophisticated. I think the district court erred here in assuming that reasonable consumers are quite sophisticated. So what about the fact that Millet knew before he even signed up for the service that someone was using his Social Security number? Do you think he should have inquired as to whether the service would report that to him or help him figure out what was going on with that? Under the reasonable consumer standard, no, I don't believe so. But that's the whole basis of his claim, that it's misleading, was that it didn't the service didn't discover that someone else was using his Social Security number. He wasn't aware, I should clarify, he wasn't aware of the specific instances of identity theft that are directly an issue here because those occurred after he had subscribed to the service. He was generally aware that in other instances he had been a victim of identity theft. But I don't think that imposes upon him an obligation to give the third degree to the company providing the product about the exact scope. I mean, to the contrary, I think it would be quite a common occurrence for somebody to sign up for an identity theft protection product after it's, you know, they've learned that they may have been a victim of identity theft and they're seeking tools to protect themselves. So, and I wouldn't expect that consumers, every time they do that, would engage in an extended conversation with the defendants in this case about the true scope. I think they would rely upon the advertising. Well, isn't it also in the record that ultimately after Millett had, I guess, fired the service, that the credit manager report did report instances of a Social Security number being misused or used by someone else in conjunction with another factor that appeared on the credit report? I don't believe it's accurate that it reflected the instances that occurred during the time he had subscribed to the product. No, no, not during, but after it reflected, the report actually noted. It meant, I don't recall off the top of my head, but our entire point is, our point isn't that it won't ever warn you about identity theft. It's that it only warns you about identity theft in very limited circumstances. And the circumstances of the identity theft that occurred while he was subscribing to the product, it didn't warn him at all. But that has to rise or fall. I mean, this is kind of repeating what Judge Wardlaw was asking you, but if the advertising and the contractual terms were clear that this is a limited product that does only one thing, and we're happy to do this one thing as well as we can, but we don't warrant that we're completely accurate, but we'll do our best, if that was clear, you're done, right? It requires some sort of ambiguity that it would cover this extended issue. Again, it depends what you mean by that's clear. Just because that's the literal language, I don't think that's enough. If it implies that monitoring your credit report is sufficient to, in fact, protect you from identity theft and it doesn't, then I think it's misleading. And if it fails to tell you about the limitations of the product, which are crucial to the degree of protection that will be provided, then I think it's misleading. I see I'm under my two minutes. I'd like to reserve my remaining time. Okay. May it please the Court, Mayor Fetter for the appellees here. I just want to start briefly with the reference to the consumer study that counsel referred to. I know, first of all, that it's important to realize that it's hard for us to say exactly what was done or what was studied because there was no discovery concerning this. This was introduced after summary judgment, and the trial court simply and properly exercised its discretion to refuse to accept it as new evidence because it was not new evidence. There is an argument in Appellant's reply brief that the trial court skipped past this and addressed it on the merits and essentially didn't look at the timeliness. But I just wanted to point out that, in fact, if you look at the order of the district court in denying the motion for reconsideration, it's clear that, in fact, it was because of failure to meet the requirements of a motion for reconsideration, and those requirements are new evidence. This is on page 48 of the excerpts of record. The April 4, 2007 order, the judge specifically says that the motion fails to meet the requirements of local rule 718 and local rule 718 in the central district is the one saying you need new evidence. Let me ask you, what was your client selling? We were selling a product to monitor people's credit reports for signs of identity theft. For signs of what? Of identity theft. All right. Now, so what would show up on a credit report that would indicate that there's been identity theft? I want to know this because I might subtract. Yes, and there are five principal things that could show up. One would be the opening of a new account under your name that they'll notify you of that in case you're not the person who has opened the account. Another would be a new inquiry from a credit grantor, which would be a signal. So I'll take the first one. Couldn't I get that myself? Can't I go online? I don't know how to go online, but can't I have somebody go online and say, how's my credit report? Well, you can, but you would be in a position of having to do that essentially every day, and that's something that could be pretty expensive after a while because. How much does that cost? I think there are a whole variety of different plans. I don't know offhand, but by law you only get one free one from each credit reporting agency a year, so to do it constantly, that would require some pretty serious monitoring. And we're certainly not saying that someone couldn't do it by themselves, but there is something provided by having the people with access to all of the new items on the report actually report to you if there's something that is a potential red flag, and those are new accounts, new inquiries by a credit grantor, which indicates that someone is trying to open a new credit account, a new delinquency, a change of address because someone might who wants to open an account in your name doesn't want you to get the bills showing that it's been opened. They want it to go somewhere else so that it can be undiscovered for a while. And the last thing would be public record items if some judgment, for instance, is entered purportedly against you. So those are, and that's actually a pretty good cross-section of the types of things that most people mean when talking about identity theft and the ways in which it can actually harm individuals, where someone actually, not just that someone uses one piece of information that is also associated with you, but has their own credit history and none of it actually goes on to your credit report. Nobody is holding you responsible for any of it. The main stream of identity theft is people using your information and identity to essentially run up bills that then end up on your credit history. Yeah, but I'm not responsible for those bills. You are not responsible for those bills, but I think that a lot of people have serious difficulty in establishing that either that they weren't theirs or making sure that continued charges, I mean, for instance, if someone says to you. What are the odds of that happening? The odds of it happening. You know, the law of life is the law of probabilities. Yeah, and I think there are some FTC reports in the record that actually look at it in detail. There's one that starts on page 197 of the excerpt of record that looks at it nationally. And unfortunately, the incidence of those sorts of identity theft has gotten to be fairly high. And there are quite a number of situations where people do succeed in running up bills that cause significant problems for people with their credit reports or even with creditors coming after them until they can prove that to the creditor's satisfaction that it really wasn't them. And, you know, the government certainly treats it as a serious problem. Why wouldn't, based on these advertisements, a reasonable consumer believe that it would be reported to them when their social security number was being used by someone else? Well, I don't think the advertisements really could be any clearer. The advertisements all across the advertisements say that this will guard against identity theft by scanning your credit report. Right. But then doesn't that assume a level of knowledge of would it be reasonable for an ordinary consumer to have about what's actually in a credit report? Well, I think that to the extent that a consumer looks at that and says that I don't know what's actually in my credit report, there are two things. One thing is this, and actually if you look at the advertisement that counsel referred to, there is a free 30-day trial period where if you want to look at it, you can actually look at the credit report and what you're getting. But even aside from that. Doesn't, tell me as a matter of fact, doesn't your social security number show up on your credit report? You know, I think that it probably shows up at least on some iterations of it, but I don't, but uses of your social security number don't automatically show up, and there's a very good reason for it. Well, wouldn't, okay, whatever the reason is, wouldn't it behoove a company that's advertising that it can guard against fraud and identity theft when we all know that social security number is one of your main pieces of identification? Shouldn't you also mention that somebody using your social security number might not show up? Well, I think the problem is if you get into. You see, most people don't know what's on their credit report. I don't know what's on mine. I understand that. I don't know what kind of information goes on there. I understand that, Your Honor, but there are two things I would say about that. Number one, the important, the most important thing for identity theft is that your credit report, whatever that is, is what's important, because the important thing is that the identity theft not show up on your credit report and screw up your credit, so that you're buying, that's what the main thing you're buying protection against. And. Where does it say that in the advertisement? I don't. The advertisement certainly doesn't explain in detail. No, what it says is learn how credit manager gives you control. Guard against fraud and identity theft. Gives you peace of mind. Who's got your credit report? Gives you peace of mind by scanning your credit report daily and alerting you to potential fraudulent items or other critical changes in your credit report. See, I suppose you could read it really narrowly to credit report, but then you have to assume a level of knowledge on the part of the reasonable consumer as to what about, if so, security number, which is a critical piece of identification. Well, in fairness, Your Honor, I don't think that that's really right, because if a consumer looks at it and doesn't know what's on their credit report, but decides that they're going to buy it, I mean, they're buying a service that says, what we do is we review your credit report. If there's a question in someone's mind about what exactly that is and whether they may have special things they're looking for in their credit report, that are not on the credit report, I don't think that any reasonable consumer is going to assume that a credit report automatically contains whatever information they might want to have. But your client, actually, as I understand the record, if someone's using the social security number fraudulently, and one of five other factors is related to the use of that social security number, you will notify purchasers of your service, right? Isn't that right? It's a little bit oversimplified, but yes, because no, because in this case, the other factors were not. Let me take one step back for something I think is important to understand about what can go on a credit report. If someone else is using a social security number, number one, the credit reporting agency has no way of knowing which person, if either of them is using it fraudulently because how do I know that? How does the reasonable consumer know that the credit company has no way of knowing when two people, don't interrupt the judge. I apologize. How does the reasonable consumer have any way of knowing that when two people are using one social security number, that that wouldn't show up on their credit report? Your Honor, I think that my answer to that is that that is not something that the reasonable consumer would be able to assume one way or the other. That it does or doesn't, but I apologize for seeming to interrupt. What I think is important to explain is that if there is just a social security number, as in this case, no other of the persons identifying information being used, but there is the same social security number, there's a very good reason that it can't show up on a credit report, and it would be against the law to disclose to one person what's on the other person's credit report or what they're doing, because the idea is to keep your credit report limited to things that are actually your charges. And if someone is using a social security number, but not your name, not your address, not your other identifying information, that's going to be the very sensible judgment is that that is not something that is fairly attributed to your credit history. Well, let me ask you this. Okay, there's a universe of credit reports, right? And the three main purveyors of credit reports, right, there's three main companies, have access to all those credit reports, right? Yes. And you're saying your company will not provide that service of letting the two people who are using the same social security number know that that's the case, even though you have access to that information. That is correct, because it's --- I don't think that a consumer would necessarily understand that, but what we're talking about here is an advertisement that in no way would promise that. The advertisement here promises, the advertisement doesn't say that we're going to provide you with notice of anything that you might consider to be within your definition of identity theft. The advertisement says we're going to help you guard against identity theft by scanning your credit report. And I think Judge Graber's example ---- what you have to do to accept your position is take the words your credit report very literally and limited to even, you know, to excluding the fact that even though you have knowledge, you might have within your ability the knowledge that someone else is using that social security number, you will not tell the consumer because that's not their credit report. Well, I don't ---- Your Honor, I don't think that that is taking it unusually literally, and I think that that may go to counsel's argument that this is somehow an inadequate form of protection against identity theft because it's not broad enough. It's not ---- that's not even the issue. The issue under California law is what they ---- this is an advertising claim. It's not the contractual claim. What the reasonable consumer would understand from looking at your ads. It's not what you think. It's not what I think. It's what the ordinary person thinks. Yes, Your Honor. But I think that this is ---- See, it says, you know, gives you peace of mind, you know, by scanning your credit report and alerting you to potential fraudulent items and other changes in your credit report. And it says, you know, that people don't know what's in their credit report. And then you see people see all these ads of movie stars going around and stealing stuff out of your trash barrel, you know. You've seen those. And then you wonder, well, you know, this is ---- they're getting all this stuff, and maybe I ought to do something about it. And so I think that what's very important to stress here is that it is what's in your credit report that is what is by far and away the most important thing in talking about protecting against identity theft. If someone is using your Social Security number, they're without it in any other way being tied to you, and they have the same number, there is no actual harm to the individual that is in any way close to the type of core identity theft we're talking about. I can understand someone not wanting that to be the case, being unhappy that it's going on. Is there a credit report in the record? I believe that, yes, I think that Mr. Miller's credit report is in the record. Is there a Social Security number on it? We can check. And then by the DR-694, I'm not sure I have it. But so many things are blacked out that it's not clear what's been blacked out. There's a report number. There's date of birth, driver's license, telephone number, spouse's name. Yeah. My colleague points out to me that at one point they were displayed. We don't currently display them, but we're not sure exactly at what time it was impossible not to display it. On page 700 of the record, there's a place for a Social Security number, but it is shown as being blank, that it is not filled in. It's not blacked out. There are dashes to indicate that it is not displayed. Yeah. That's probably because we stopped. When did you stop? Well, before. This is from 2003, so it would have been before the time period at issue in the lawsuit. Yeah. And, again, it would be against the law to tell somebody what is going on with another consumer who has the same Social Security number. Right, but that's beside the point. No, I understand that. That's really beside the point, because. Well, it might be good news. You know, maybe they're paying into your fund and your pension is larger and you have to be 65. Yeah. I think that for a reasonable consumer to find the advertising misleading, there would have to be something on there that would lead them to believe that there is specific information that they're expecting on their, in the first place, beyond what goes on their credit report. And this is quite clear that what you're getting is a scanning of your credit report, and if someone does not know what's on their credit report or is not sure that what they're looking for, if they, for some reason, want something beyond their credit report, if they don't know what's on there, there certainly would be, certainly a reasonable consumer couldn't simply assume that whatever that they were hoping to look for would be there. So, and I guess one other question is, so this was on summary judgment. Isn't it generally a question of fact what a reasonable consumer would interpret an advertisement to be? Well, yes, it is generally a question of fact, but this is something where the California courts have regularly granted summary judgment, or I'm not using the right term, but decided summarily where it's clear that no reasonable consumer could interpret it in the way suggested. And frankly, if this is not clear enough, I mean, that suggests an extraordinarily lenient standard for everything going to the jury, because it is. Have you read the Gerber case? Yes, I have, Your Honor. Gerber is a good contrast, because in Gerber you have the, first of all, two main differences. You have the photos right up front making a misleading suggestion, and the argument on the other side has to do with someone having to read fine print. When you look at the ingredients that. It's somewhat similar. Here you have the advertisement, and then you have the terms and conditions. Leaving the terms and conditions out of it entirely, Your Honor, there is nothing in this advertisement that misleadingly suggests anything other than exactly what is being done here. This is very clear about exactly what the service is that people are buying, and it's not like it says we guarantee that all forms of information will be provided to you in the small print saying. So I'm sorry to interrupt you, but it seems to me that part of your argument is, if I'm understanding it, the advertising clearly specifies that the way in which that you will help people attain peace of mind is to monitor their credit report and determine whether there are indicia in it that might suggest identity theft, and then let them know. And so the question is, if a reasonable consumer doesn't know what's in a credit report, how does that change the analysis? Because that's really the question that it comes to, because at least in my mind, there's no question that the ad says, we'll tell you what we find in your credit report, and we'll tell you right away. But people may assume that a whole lot is in there that isn't. So what do we do with that as a legal matter? Well, I would say two things. One is the peace of mind phrase is, again, disconnect correctly. No, no. You'll get off on that. The issue, it's like the Gerber folks not knowing what a vegetable is. I mean, it's the question, the question is here, it's clear that it bonds to the credit report, but what is a credit report? And if somebody doesn't know that, does that make them unreasonable as a matter of law, or what do you do with that? Well, I think what you do with that is, I think that actually opposing counsel has the right legal construct for looking at that, which is that he says along basically along those lines that this is misleading because it suggests that this is a good way or, you know, that you're, I'm trying to use the exact language that he used, that it's an adequate means of protecting against identity theft. In other words, that for it to be misleading, taking that concern into account, I think no reasonable consumer is going to take this to mean that you have guaranteed protection against identity theft. So it's misleading, as he argues, if this really is not a reasonable way of protecting against identity theft. If it really is like just alarming one window or one door or something like that when there's so much else out there that would need to be done and this is not the case, first of all, he's put in no evidence at all to suggest that this would not be the, actually the core of identity theft that you're protecting against, and I think the record reflects that the types of identity theft that are of concern, if you look through the FTC reports, are exactly the kinds of things that are, are the kind of criminals or services that, where you then get stuck with the creditors or the bad credit history on your credit report. So there is certainly no genuine issue here as to whether this is a reasonable way, just as spying an alarm is a reasonable way of protecting your house, though far from foolproof. Certainly no one could take it to suggest that it's a foolproof way of protecting against identity theft, but I think the clear message here for any reasonable consumer is we're buying something that is going to be a decent protection against identity theft that is performed by reviewing your credit report. Okay, I just have one last question. You know, there's no insurance sold with this, is there? Do you buy the membership? Do you buy insurance? Identity theft insurance? Yeah, I'm trying to give you a new financial product. Yeah. Those new financial products have been doing so well lately, right? I'm not aware of it, but I couldn't warrant that there isn't something like that out there, but essentially that seems to be what they're asking for in a way is to treat it as something that, you know, because we may not understand exactly what's in a credit report, and there may be some peripheral ways that you can call something identity theft that isn't, we have the right to expect, based on this, that we'd be getting protection against that as well. Is this diversity jurisdiction? It is. Okay. And then my last question is the line under Guard Against Fraud and Identity Theft, it says receive notification of new inquiries, bank card accounts, delinquencies, and public record items. Now, how do you suggest a reasonable consumer would understand public record items? What page are you looking at? I'm looking at PR 688. PR what? 688. Oh, 688. Where's that here? It's part of the advertisement. It says, what? Oh, comprehensive credit management. So public record items, that's, I mean, that. I think that the, I mean, the reasonable consumer. You have to take that to be modified by your credit report. Yes. To limit it to not all public records. Yes. No, no, yes. I think that there's no question the reasonable consumer would take that to be the public record items that hit your credit report. All right. Thank you. Thank you, Your Honor. That's an excellent argument. Okay. It's interesting. I have a question. I'm sure you have things you want to say. But I do have a question concerning the Meyer case that was brought to our attention by means of a 28J letter in support of the argument that your clients didn't suffer any actual harm sufficient to meet the California standard. And I wanted to give you a chance to respond to that. I'd be happy to, Your Honor. Your Honor, I think the Meyer case addresses an issue that's simply not before this court. It wasn't a basis for the underlying summary judgment motion that plaintiffs had failed to show harm. Indeed, that wasn't really even discussed in the underlying summary judgment proceedings because this just became the law in California five days ago. Well, no, it was an argument made in the briefs. That's why they were allowed to file the 28J. So it was an argument that was made in the briefs. So rather than give me a technical answer, tell me how it is that your clients suffered actual harm sufficient to maintain an action. It was covered in the appellate briefs. I was only referring to the summary judgment proceedings. But I think it's a fact question. And obviously we're not entitled to provide new evidence at the level of the appeal. I think to flesh that issue out, you would have to go back to the district court and allow us to filter through the evidence and provide whatever evidence we were going to provide on that issue. The short answer, I'm not sure. I've not examined it. I thought it was clear from the summary judgment papers that although the Social Security number was used, no billings resulting from that were sent to your clients and their credit history was not affected. Is that an incorrect understanding of what's in the record? That's not an incorrect reading. What I'm saying, Your Honor, is it is correct. But whether there are other injuries that the plaintiff's mirror may not have suffered from the result of that unconscionable language, I haven't assessed that fact. We never were allowed to present evidence on that fact. Well, is there anything else that you have alleged even in the complaint on that point? Well, again, our complaint was alleged in terms of the laws that existed at that point. The mistake you made was you should have had that survey, you see, and introduced that evidence. At summary judgment stage. Then you had a disputed issue of fact. But you didn't do that. I was amazed that you didn't do that. Had the summary judgment proceedings not occurred so much, so early in comparison to the discovery cutoffs and the expert deadlines, we certainly would have done so. Well, you could have asked for some extra time. You could have asked for time under 56F. That's correct, Your Honor. What was that? That is correct. We could have made that request, Your Honor. And, again, the survey evidence, this Court will have to decide whether it properly considers it. I think if this Court does consider it, it's overwhelming evidence that the district court erred in its analysis. How is it new evidence? How is it not available to you at the time of the summary judgment? It's a survey based upon the advertisements that were actually used in the summary judgment motions. Obviously, we couldn't have conducted a survey based upon those specific ads prior to the time of the summary judgment proceedings. And, again, I don't think it's fair to say that we were untimely in producing the survey. You mean you didn't have any of these ads when you filed your lawsuit? We had a number of ads. Much of the crux in this case is understanding which ads were. If they were ads that didn't exist at the time your client purchased, they'd be completely irrelevant anyway. I'm not saying that. So they would have had to exist. And, I mean, even assuming that there was harm from allegedly relying on these, they had to have existed. And I'm not saying that these ads didn't exist. What I'm saying is the survey had to be conducted based upon specific ads. If we had conducted the survey based upon two of the many ads that we had, and then the summary judgment motion was based on two different ads, the survey evidence wouldn't be particularly good. And if you have a summary judgment, you get discovery, right? A discovery. Well, and that's entirely another issue. Well, it isn't, because if the plaintiffs allege I relied on an ad that misled me, they know what the ad is. That's the whole basis of their lawsuit, presumably. So to say you had to wait and discover that from someone else doesn't follow. And, again, I mean, it's certainly this Court's position to decide whether that evidence is properly before it. I only bring it up because if this Court does consider it, I think it's overwhelming what overwhelming evidence that the district courts there are. But it was available to you at the time. And you didn't, you know, the summary judgment is serious business these days. We could have conducted a survey earlier than we did, yes. I do not deny that, Your Honor. So what was wrong with the judge's ruling? He said, sorry, I'm not admitting it. You know, they've got 500, 600 cases apiece to worry about. And they want things to go like that. I think the problem with the judge's ruling is largely what this panel has hit upon, and that's a complete failure to actually apply the reasonable consumer standard, as California courts interpret it. Again, as this panel has just recently covered in questioning Appalachian District Council, you have to ask what a reasonable consumer understands about any of this. Do they understand what's in a credit report? Do they understand how reviewing certain items from a credit report may or may not protect them from identity theft? It seemed to me that you could have had all that if you had done a survey. But you didn't. You're right. We didn't conduct a survey earlier, Your Honor. But I don't. Just admit it. Admit it. You goofed. You didn't do a survey. We didn't do the survey as early as we could. I do admit that, Your Honor. The President of the United States admitted that he made a mistake, didn't he? We all make mistakes. Fair enough, Your Honor. I don't think that means ---- Is this a class action, or is this just on behalf of Demelitz? It is a ---- it was pled as a class action, but it had not gotten to this stage of certification. And actually, certification was subsequently denied. When was summary judgment before certification? Again, this summary judgment was very early. The summary judgment motion was filed days after the Fourth Amendment pleading. The Court ruled on the motion within two months after we had filed the Fourth Amendment pleading. That's a long time. And that may be, Your Honor. I was just responding to the question that the Court had entered summary judgment before we ever got to the class certification process. So the notes are out of luck because they didn't have the survey, but someone else might not be out of luck. They relied on the same advertising, and now you've got the survey. That may be, Your Honor. That issue has not been fleshed out, because the summary judgment ---- and I should clarify. The summary judgment came down after the initial class cert motion was filed, but before the response or reply were filed. Right. It wasn't a class certified, so no members of the class are barred. Right. I believe that's correct at this point, Your Honor. Going back to the reasonable person standard, the fact that regardless of the survey evidence, I still think it's clear that the district court failed to properly apply that standard. It seems to me opposing counsel is suggesting that a reasonable consumer, upon ---- if they didn't understand exactly what this ad meant and they didn't know what was in a credit report, then they should have conducted some investigation of what was meant by that. But California courts, people recall, specifically recognized that a reasonable consumer is not required to investigate the merits of the claims made in the advertising. I don't think that's fair to put that burden on the reasonable consumer. And with all due respect, I think what the district court did in this case is it viewed the advertisements and the contract from its perspective rather than from the perspective of a reasonable consumer. And with all due respect ---- You said this now. I think we understand all of it. Okay? The reasonable consumer issue? Yeah, sure. All the issues. You got another one? I do have several points I'd like to hit if I could. And I just note that opposing counsel had almost 14 extra minutes at the court. Right, but it wasn't exactly his time. I understand. I'll stop now if you'd like. It was my time, basically. Fair enough. Fair enough. Would you like me to stop or may I hit a few more points? Well, we don't want you to walk out of here feeling abused. May I make one more point before closing? Yeah, go ahead. And that's that it's also important to consider this case was decided at a summary judgment level. We're not talking about a jury verdict. We know that. We're just talking about the undisputed facts. And this Court has recently recognized that even when facts are undisputed, if conflicting inferences can be drawn from those facts, summary judgment is inappropriate. And I think the discussion here today alone indicates that widely divergent inferences can be drawn from these advertisements. And that in itself indicates that it was improper to grant summary judgment in this case. That's a good argument. If there are no further questions, I'll conclude with that. Okay. Thank you, Your Honor. Thank you. All right. All right. We're going to take a short break. And this will give you a chance to sign up for the rest of it. Thank you.
judges: Pregerson, Graber, Wardlaw